# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| CURTIS J. HAMMOND, JR., as Independent Administrator of the Estate of CURTIS J. HAMMOND, SR., Deceased, and CURTIS J. HAMMOND, JR., as Independent Administrator of the Estate of EILEEN M. HAMMOND, Deceased, | ) ) ) ) ) ) ) | |
| | ) | Case No. 11-cv-1295 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SYSTEM TRANSPORT, INC., a Washington corporation, TRANS-SYSTEM, INC., an Indiana corporation, and ROBERT D. AUSTIN, | ) ) ) ) ) | |
| Defendants. | ) | |

## <u>O R D E R   &   O P I N I O N</u>

This matter is before the Court on the Motion to Dismiss Counts II, IV, VI, and VIII of Plaintiff's First Amended Complaint filed by Defendants on October 3, 2011 (Doc. 13), and the Motion to Exclude Exhibits Offered in Support of Motion to Dismiss Counts II, IV, VI, and VIII of Plaintiff's First Amended Complaint (Doc. 17). For the following reasons, both of Defendants' Motions are granted.

## BACKGROUND[1]

On July 30, 2011, a semi-tractor trailer driven by Defendant Robert D. Austin ran a stop sign and collided with a Jeep driven by Curtis J. Hammond, Sr. at the intersection of U.S. Routes 136 and 24 in Fulton County, Illinois. (Doc. 5 at 2). At the time of the collision Defendants System Transport, Inc. and Trans-System, Inc. owned, operated, and maintained the semi-tractor trailer driven by Defendant Austin (whom they employed). (Doc. 5 at 2-3). Both Curtis J. Hammond, Sr. and Eileen M. Hammond (who was a passenger in the Jeep) died as a result of the crash.

Plaintiff Curtis J. Hammond, Jr., as the Administrator of the Estates of Curtis J. Hammond, Sr. and Eileen M. Hammond, filed a ten-count First Amended Complaint against Defendants on August 29, 2011. In the First Amended Complaint, Plaintiff alleges violations of federal, Illinois, and Missouri law. Counts I, III, V, and VII seek recovery under the Illinois Wrongful Death Act, 740 ILCS 180/1 et. seq., and Counts IX and X seek recovery under the Illinois Survival Act, 755 ILCS 5/27-6. Counts II, IV, VI, and VIII seek "aggravating circumstances" damages—the equivalent of punitive damages—under Missouri law for the wrongful death of the Hammonds. In support of the claims for aggravating circumstances damages, Plaintiff alleges that Defendant Austin operated a semi-tractor trailer in the state of Missouri while being in violation of Federal Motor Carrier Safety Regulations and Mo. Rev. Stat. Sec. 390.171 within a few days of the accident, thus leading to fatigue.

---

[1] The Court draws the facts included in this background section from Plaintiff's First Amended Complaint, treating his allegations as true and drawing all reasonable inferences in his favor.

On October 3, 2011, Defendants filed the present Motion to Dismiss, in which they argue that Illinois law applies to the aggravating circumstances damages issue, and that, because such damages are not available in Illinois in wrongful death cases, the counts of the First Amended Complaint seeking such damages must be dismissed. (Doc. 13 at 6). Plaintiff filed a Response on December 19, 2011, in which he argues that Defendants' Motion to Dismiss should be treated as a motion for summary judgment, and that he should be given an opportunity to conduct discovery to properly oppose Defendants' Motion. (Doc. 16 at 2). Defendants then filed a Motion to Exclude, in which they ask the Court to exclude the exhibits attached to their Motion to Dismiss. (Doc. 17 at 3).

DISCUSSION

### 1. Motion to Exclude

Plaintiff points out that Defendants attached evidentiary material to their Motion to Dismiss. Plaintiff notes that under Federal Rule of Civil Procedure 12(d),

> [i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

FED. R. CIV. PRO. 12(d). Plaintiff argues that "[a] clear reading of the Federal Rules would indicate that since the defendants have attached evidentiary materials to their motion to dismiss, the plaintiffs should be given an opportunity to conduct discovery to oppose any motion to dismiss." (Doc. 16 at 2). In other words, Plaintiff maintains that the present Motion to Dismiss is actually a Motion for Summary

Judgment, and that, because no discovery has been conducted, the Motion should be denied.

Defendants, apparently realizing their mistake, filed a Motion to Exclude the exhibits at issue. Defendants draw the Court's attention to the language in Rule 12(d) that states that a motion to dismiss which presents matters outside the pleadings must be treated as one for summary judgment only if the matters outside the pleadings are "not excluded by the court." (Doc. 17 at 2). Defendants note that "the presentation of matters outside the pleadings in conjunction with a Motion to dismiss under Rule 12(b)(6) does not automatically require its conversion to a Motion for Summary Judgment under Rule 56." (Doc. 17 at 2). They then argue that "the Exhibits attached to defendants' Motion are not necessary for the Court to determine whether Counts II, IV, VI, and VIII fail to state a cause of action under Rule 12(b)(6)," and ask the Court to exclude them and rule on the Motion to Dismiss. (Doc. 17 at 3).

This Court has the power to exclude the exhibits and rule on Defendants' Motion to Dismiss based only on the well-pleaded allegations in Plaintiff's First Amended Complaint. *See Reyes v. Walgreen Co.*, No 11 C 8598, 2012 WL 1319419, at *1 (N.D. Ill. April 17, 2012); *Janus v. Wright Medical Technology, Inc.*, No. 11-CV-1183, 2011 WL 6370567, at *2 (C.D. Ill. Dec. 20, 2011). The Court finds that it is appropriate in this situation to exclude the exhibits that Defendants attached to their Motion to Dismiss. Because the exhibits will be excluded, Defendants' Motion

to Dismiss need not be converted into a motion for summary judgment. Defendants' Motion to Exclude is therefore granted.

### 2. Motion to Dismiss

#### a. Standard of Review

"In ruling on Rule 12(b)(6) motions, the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir.2008)). To survive a motion to dismiss under 12(b)(6), a plaintiff's complaint must "plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *EEOC v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560-63 (2007)). Though detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 547. "The complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557; *Tamayo*, 526 F.3d at 1084).

#### b. Legal Standard Regarding Choice of Law

When a court is sitting in diversity, as this court is, it must apply the substantive law of the forum state, including the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941). Illinois has adopted the choice of law methodology of the Restatement (Second) of Conflict of Laws. *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007). The

methodology of the Second Restatement "has three principal features: (1) the policies of section 6; (2) the concept of the 'most significant relationship'; and (3) the lists of particularized connecting factors." *Id.* at 900.[2] In a tort case, the applicable "connecting factors" are found in section 145(2). *Id.* at 901.

Under section 145(2) of the Second Restatement, when determining which state's law applies to an issue, a court should consider (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the parties' relationship is centered. *Id.* at 901 (citing Restatement (Second) Conflict of Laws § 145(2)). However, a court does not merely count the number of contacts and find that the state with the greatest number has the most significant relationship to the parties and the occurrence. Instead, the court considers the contacts in light of the general principles identified in section 6 of the Second Restatement. *Id.* at 906. The principles of section 6 include: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic principles underlying the particular

---

[2] The Second Restatement also endorses the concept of *dépeçage*, "which refers to the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis." *Id.* at 901. *See* Restatement (Second) Conflict of Laws § 145(1) (1971) ("The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, *with respect to that issue*, has the most significant relationship to the occurrence and the parties . . . ." (emphasis added)). In considering the present Motion, there is only one relevant issue: the choice of law regarding punitive damages.

field of law; (f) certainty, predictability, and uniformity of result; and (g) ease in the

determination and application of the law to be applied. *Id.* at 900 (citing

Restatement (Second) Conflict of Laws § 6).

Along with the "general sections," such as sections 6 and 145, which "embody

a free-form approach to choice of law," *id.* at 902, the Second Restatement also

contains specific presumptive rules for particular torts. The presumptive rule for

wrongful death actions is found in section 175, and is stated as follows:

> In an action for wrongful death, the local law of the state where the
> injury occurred determines the rights and liabilities of the parties
> unless, with respect to the particular issue, some other state has a
> more significant relationship under the principles stated in § 6 to the
> occurrence and the parties, in which event the local law of the other
> state will be applied.

Restatement (Second) Conflict of Laws § 175 (1971). This presumption in favor of

the state where the injury occurred "may only be overcome only by showing a *more*

or *greater* significant relationship to another state." *Townsend*, 879 N.E.2d at 903

(emphasis in original).

As to the order of operations in a choice-of-law analysis, the Illinois Supreme

Court recently clarified:

> [A] court begins a choice-of-law analysis in a tort case by ascertaining
> whether a specific presumptive rule . . . applies to the disputed conflict.
> Next, if the presumptive rule points to a specific jurisdiction, then the
> court must test this presumptive choice against the principles
> embodied in section 6 in light of the relevant contacts identified by the
> general tort principles in section 145. The presumptive choice controls
> unless overridden by the section 145 analysis.

*Townsend*, 879 N.E.2d at 909. For a wrongful death action, then, a court must *begin*

the analysis by determining whether the presumptive rule—that "the local law of

7

the state where the injury occurred determines the rights and liabilities of the parties"—points to a specific state. If it does, this state is presumed from the beginning to be the state that has the "most significant relationship" to the occurrence and parties. This presumptive choice is then tested against the section 6 principles as applied to the particularized connecting factors of section 145(2).

### c. Recent Cases Examining Applicable Legal Standard

In 1970 the Illinois Supreme Court adopted the choice-of-law methodology of (what would become) the Second Restatement of Conflict of Laws for tort cases. *Ingersoll v. Klein*, 262 N.E.2d 593 (Ill. 1970) (citing preliminary draft of Second Restatement). In the years that followed its adoption, the Illinois Supreme Court "had only a relatively few occasions to address choice-of-law issues arising from the Second Restatement." *Townsend*, 879 N.E.2d at 898. However, in 2007, the Illinois Supreme Court found that "a thorough discussion of choice-of-law principles and methodology [was] necessary." *Id.* It engaged in this discussion in significant detail in *Townsend v. Sears, Roebuck & Co.* Fortunately, not only does the Court have a recent discussion of the application of the Second Restatement at its disposal, it has a discussion that touches on the issue presented in this case: *Townsend*, like this case, involved a dispute as to which of two states' laws governed the availability of punitive damages. *Id.* at 908-09. Additionally, two district court cases from within this circuit have dealt with post-*Townsend* disputes in which the principles of the Second Restatement were utilized to resolve choice-of-law questions involving punitive damages claims. Because the Court believes that *Townsend* represents an

important clarification of Illinois' approach to choice of law analyses regarding punitive damages, *Townsend* and the federal district court cases interpreting the decision will be examined in some detail below.

i. *The Illinois Supreme Court's* Townsend *Decision*

*Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007), was a personal injury case in which a child was injured by an allegedly defective riding lawnmower. Plaintiff's family purchased the lawnmower in Michigan, which was also the state in which the child was injured and the family was domiciled. *Id.* at 896. The defendant's principal place of business was Illinois, and the lawnmower was manufactured in South Carolina.[3] *Id.* Illinois does not prohibit recovery of punitive damages in product liability cases, while Michigan law makes clear that such damages may not be imposed. *Id.* at 899. Not surprisingly, plaintiff argued that Illinois law should apply to the punitive damages issue, while defendant maintained that Michigan law was the more appropriate choice. *Id.* at 897.

After finding that a "real conflict" existed between the laws of Illinois and Michigan such that a choice-of-law analysis was necessary, *id.* at 898-99, the court engaged in a detailed analysis of the Second Restatement, discussing the evolution of choice-of-law analysis, the reasons for the creation and implementation of the Second Restatement, and the ways in which the Second Restatement should be utilized in approaching choice-of-law problems. *Id.* at 899-904. Applying the Second

---

[3] Sears pled affirmative defenses alleging contributory negligence, which ultimately became relevant in the court's determination of the place where the conduct causing the injury occurred. *Id.* at 906. Because "[a] court's consideration of injury-causing conduct in a section 145 analysis includes all conduct from any source contributing to the injury," the court viewed the "place of conduct" factor as a wash. *Id.*

9

Restatement to the facts of the case, the court found that the presumption that "the local law of the state where the injury occurred determines the rights and liabilities of the parties" had been given insufficient consideration by the appellate court. *Id.* at 904 (quoting Restatement (Second) Conflict of Laws § 146). As to the punitive damages question, the Illinois Supreme Court flatly rejected the appellate court's conclusion that while Michigan had an interest in compensating its citizens for injuries that occurred in that state, "where the purpose of disallowing punitive damages is not related to redressing the plaintiffs' injury, once the plaintiffs are made whole by recovery of the compensatory damages to which they are entitled, the interests of Michigan law are satisfied." *Townsend v. Sears, Roebuck & Co.*, 858 N.E.2d 552, 561 (Ill. App. Ct. 2006). The court found that "[t]he appellate court's characterization that Michigan 'has an interest' in this conflict is an understatement that fails to recognize the strong presumption in favor of applying Michigan law." *Townsend*, 879 N.E.2d at 908.

The Illinois Supreme Court focused its criticism on the appellate court's reliance on comments c and e of section 146. As to comment c, the supreme court noted that

> [c]ertainly, comment c instructs: "The extent of the interest of each of the potentially interested states should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and of the particular issue." However, the comment continues on the same page to advise: "The likelihood that some state other than that where the injury occurred is the state of most significant relationship is greater in those *relatively rare* situations where, with respect to the particular issue, the state of injury bears little relation to the occurrence and the parties." (Emphasis added).

*Id.* at 908-09 (citations omitted). The purposes of punitive damages, then, may be considered in the analysis, but such considerations will only carry significant weight toward a finding that the law of a state *other than* the state in which the injury occurred applies where "the state of the injury bears little relation to the occurrence and the parties." As to comment e, the supreme court noted that while comment e does state that "[a]n important factor in determining which is the state of most significant relationship is the purpose sought to be achieved by the rule of tort law involved," and that "[i]f this purpose is to punish the tortfeasor and thus deter others from following his example, there is better reason to say that the state where the conduct occurred is the state of dominant interest and that its local law should control than if the tort rule is designed primarily to compensate the victim for his injuries . . . ," comment e also cautioned that "*[t]his factor must not be overemphasized.* To some extent, at least, *every* tort rule is designed *both* to deter other wrongdoers *and* to compensate the injured person." *Id.* at 909 (quoting Restatement (Second) of Conflict of Laws § 146, cmt. e (1971)) (emphasis in original). The court found that "[d]espite this explicit caution, the appellate court not only undervalued the strong presumption in favor of Michigan law, but overemphasized its perception of the interests Illinois and Michigan have in their different concepts of tort damages." *Id.* at 909.

The Illinois Supreme Court concluded that while "Illinois certainly has a legitimate interest in the liability to be imposed on Illinois-based defendants . . . Michigan has an equally legitimate interest in the remedies to be afforded its

11

residents who suffer such tort injuries." *Id.* The choice of law analysis for the punitive damages issue, then, resulted in a wash: "if the substantive law of these two states looks in different directions, each state would seem to have an equal interest in having its tort rule applied in the determination of the conflicting issues in this case." *Id.* Because each state had equal interests, the court concluded that "a section 145 analysis does not override our strong presumption that the law of Michigan, as the state where plaintiffs reside and where the injury occurred, governs the conflicting issues presented in this case." *Id.*

### ii. *Federal District Court Cases*

*Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744 (N.D. Ill. 2010), was the first case in which Illinois law was used to confront a choice of law dispute on a punitive damages claim post-*Townsend*. In *Smith*, the place of injury and place where the parties' relationship was centered was Michigan, where the plaintiff was injured by defendants' pain pump device. The domicile factor did not point to any one state: plaintiff was a citizen of Michigan, and defendant had its principal place of business in California. *Id.* at 747. The conduct that caused the injury—the defendant's "decisions regarding marketing and distributing of its pain pumps, and its activities that . . . warrant imposition of punitive damages"—took place in California. *Id.* at 748. Plaintiff argued for the application of California law (which allowed for punitive damages), while defendant argued that Michigan law (which did not provide for punitive damages) applied.

In analyzing the section 6 factors, the *Smith* court wrote:

The purpose of punitive damages is distinct from that underlying compensatory damages. Specifically, the purpose of punitive damages is a purely *public* one. The public's goal is to punish wrongdoing and thereby to protect itself from future misconduct, either by the same defendant or other potential wrongdoers. Conversely, the purposes of a state's decision to disallow punitive damages is to protect its residents from excessive liability. More generally, the purpose of a decision to impose or not impose punitive damages has to do with regulation of conduct.

This suggests that *the state in which a defendant is domiciled has a considerably stronger policy interest in whether punitive damages are available than the state in which the plaintiff's injury occurred.*

*Id.* at 748 (citations and quotations omitted) (emphasis added). As to the latter paragraph, the court noted that such a conclusion "is what the Restatement suggests" in comment c to section 145, "though it cautions against overemphasis of this factor." *Id.* Based on this interpretation of the purposes of punitive damages and the interests of the parties' respective domiciles, the court found that "with respect to the issue of the availability of punitive damages, the Smiths have rebutted the presumption in favor of applying the law of the state where Mrs. Smith's injury took place." *Id.* at 749. The court elaborated: "Michigan has only a minimal interest in whether a corporation that does not reside within Michigan's borders should or should not be assessed punitive damages based on conduct that likewise occurred outside the state. This is far outweighed by California's interest in regulating the conduct of its corporate citizens." *Id.*

In another recent case from a district court in this circuit, *Curtis v. TransCor America, LLC*, No. 10 C 4570, 2012 WL 1080116 (N.D. Ill March 29, 2012), the court was faced with a difficult factual scenario in which the place of

injury, the place where the relationship between the parties were centered, and the place of the conduct causing the injury were unclear. In *Curtis*, the defendant prisoner transport company had transported Joseph Curtis from a federal prison in Kansas, through Illinois, to a federal prison in Indiana. *Id.* at *1. Curtis died of heat stroke. *Id.* According to plaintiff's complaint, the outside temperature along the route exceeded 95 degrees and the air conditioning in the transport van was not functioning, thereby causing Smith's death. Defendant argued that Illinois or Indiana law (neither of which allow the imposition of punitive damages in wrongful death cases) applied to the punitive damages issue; plaintiff argued that Tennessee law (which allows for punitive damages in wrongful death cases in certain circumstances) applied because the defendant was headquartered in that state. *Id.*

Although the court noted that "there typically is a strong presumption that the law of the state where the injury occurred governs in personal injury cases," *id.* at *5, it found that the weight to which that factor was entitled was lessened due to the facts of the case, *id.* at *7. Specifically, although

> the place of injury was not fortuitous in the way that it is when a plane drops out of the sky and where it comes to rest depends on the speed of the aircraft, its trajectory, the nature and timing of the accident, prevailing winds, and so on . . . the location of the injury was somewhat fortuitous in that [Curtis] had no choice as to how and when he was transported or where he became ill.

*Id.* at *6. The court also found that the place-of-injury presumption was less persuasive because Smith was not a resident of the state in which the injury occurred. *Id.* at *7.

14

As to the place where the conduct causing the injury occurred, the court found that the factor was not particularly useful, as it was clear "that some of the allegedly negligent conduct at issue here occurred in Illinois and Indiana, while some occurred in Tennessee." *Id.* at *8. Because alleged misconduct occurred in each state, "all three have an interest in the application of their law as to the imposition of punitive damages in wrongful death cases," so the analysis "does not point to the application of one interested state's law over another's." *Id.* The court also found that because the relationship between the parties was not truly "centered" in any one state, that factor should similarly be afforded little weight. *Id.* at *9.

The court found that the final section 145 factor—the residence of the parties—clearly weighed in favor of Tennessee law. The court noted that even though the defendant did business in Illinois and Indiana, "it is significant that TransCor chose to locate its headquarters in a state that allows for the imposition of punitive damages of wrongful death cases." *Id.* at *8. Additionally, much of the defendant's other business activities potentially relevant to the case—such as the site of its employee training programs and the location of its maintenance facility— took place in Tennessee. *Id.* Although the court did not explicitly discuss it in its section on residence of the parties, it seems that the fact that Smith had been domiciled in Iowa (and not Illinois or Indiana) was another factor in favor of the application of Tennessee law.

Because the court's analysis revealed that the only state to which the section 145 factors pointed with any force was Tennessee, the court found that Tennessee

15

law should apply to the determination of punitive damages. *Id.* at 9. The court tested this determination against the Second Restatement's section 6 factors. It found important the fact that punitive damages "are meant to punish wrongdoing and deter future, similar misconduct," and not to "compensate a plaintiff for the damage he or she has suffered." *Id.* at 10. The court also agreed with the *Smith* court's assertion that the underlying purpose of punitive damages "'suggests that a state in which a defendant is domiciled has a considerably stronger policy interest in whether punitive damages are available than the state in which the plaintiff's injury occurred.'" *Id.* (quoting *Smith*, 753 F. Supp. 2d at 748). It concluded that "an analysis of the § 6 factors does not change this court's conclusion that the law of Tennessee should apply to the punitive damages issue." *Id.* at 11.

### d. Application of Illinois' Choice-of-Law Rules

#### i. *Conflict Between Illinois and Missouri Laws*

"[B]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states." *Barron v. Ford Motor Co. of Canada, Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992). *See Townsend*, 879 N.E.2d at 899 ("A choice of law determination is required only when a difference in law will make a difference in the outcome."). Here it is clear that there are differences between Missouri and Illinois law that would make a difference in the outcome of the case.

Illinois law does not allow for the imposition of punitive damages in wrongful death cases. *See Mattyasovszky v. W. Town Bus Co.*, 313 N.E.2d 496, 502 (Ill. App.

Ct. 1974). Missouri's wrongful death act does not expressly provide for punitive damages. Mo. Rev. Stat. § 573.090. However, it does allow the trier of fact to consider "mitigating or aggravating circumstances attending the death." *Id. See also Bennett v. Owens-Corning Fiberglass Corp.*, 896 S.W.2d 464, 466 (Mo. 1995). Damages for "aggravating circumstances" are in the nature of punitive or exemplary damages. *See Bennett*, 896 S.W.2d at 466; *Haehl v. Wabash R.R. Co.*, 24 S.W. 737, 741 (Mo. 1893); *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 164 (Mo. Ct. App. 1997) ("Aggravating circumstances damages are punitive in nature."). "Accordingly, an award for more than compensatory damages in a wrongful death case is permissible only if the decedent would have been entitled to punitive damages had he or she lived." *Trotter v. B&W Cartage Co., Inc.*, No.05-cv-0205-MJR, 2006 WL 1004882, at *2 (S.D. Ill. April 13, 2006) (applying Missouri law). *See Dougherty v. Smith*, 480 S.W.2d 519, 521 (Mo. Ct. App. 1972). "Aggravating circumstances" damages require proof "willful misconduct, wantonness, recklessness, or want of care indicative of indifference to consequences." *Wiseman v. Missouri Pac. R.R. Co.*, 575 S.W.2d 742, 752 (Mo. Ct. App. 1978).

Plaintiff makes allegations of "aggravating circumstances" in Counts II, IV, VI, and VIII of the First Amended Complaint. (Doc. 5 at 5, 10, 15, 21). In these Counts, Plaintiff argues, for example, that Defendants' "willful, wanton and reckless conduct created a high degree of probability of injury or death, and thereby showed complete indifference or conscious disregard for the safety of others." (Doc. 5 at 6-7). Such allegations sufficiently state a claim for (what amount to) punitive

damages under Missouri law. Because such an action for such damages could be maintained under Missouri law but not Illinois law, the Court finds that the "difference in law will make a difference in the outcome" of the case, *Townsend*, 879 N.E.2d at 899, and that a choice of law determination is therefore necessary.

ii. *Applicable Presumptive Rule*

As discussed above, the Second Restatement contains specific presumptive rules for particular torts. The presumptive rule for wrongful death actions is found in section 175:

> In an action for wrongful death, *the local law of the state where the injury occurred determines the rights and liabilities of the parties* unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) Conflict of Laws § 175 (1971) (emphasis added). Here there is no dispute as to the state in which the accident took place: Defendants' truck struck the Hammonds' Jeep at the intersection of Route 24 and Route 136 in Fulton County, Illinois. The law of Illinois will therefore determine the punitive damages issue in this case unless a "*more* or *greater* significant relationship" to Missouri can be shown. *Townsend*, 879 N.E.2d at 903 (emphasis in original).

iii. *Section 145 Factors*

In this case, most of the section 145 factors are relatively straightforward. As stated above, there is no dispute that the place of injury is Illinois. The "domicile, residence, place of incorporation, and place of business of the parties" appears to be undisputed: the decedents were Illinois citizens; Defendant Austin was a citizen of

18

Missouri; Defendant System Transport, Inc. was incorporated under the laws of Washington, was a citizen of Washington, and had its principal place of business in Washington; and Defendant Trans-System, Inc. was incorporated under the laws of Indiana, was a citizen of Washington, and had its principal place of business in Washington. Additionally, it is clear that "the place where the parties' relationship is centered" is the same as the place of injury—Illinois.[4]

The second section 145 factor—"the place where the conduct causing the injury occurred"—is somewhat more complicated in this case. On this point, Plaintiff argues:

> The choice of law question will require determinations of the character and the amount of time in violation of the Federal Motor Carrier Hours of Service Regulations by the defendant, Robert Austin, both in the states of Missouri and Illinois, and for how long a period of time defendant Austin had been driving in excess of the hours of service, thus leading to the fatigue that plaintiffs have alleged arose as a result of the violation of the Federal Motor Carrier Hours of Service Regulations.

(Doc. 16 at 3). In other words, Plaintiff maintains that the conduct that caused the injury—Defendant Austin's fatigue, brought on by driving for an excessive period of time in violation of federal law—may have occurred substantially in Missouri, and that Missouri law may therefore apply to the punitive damages issue.

In sum, the first contact—place of injury—favors Illinois. The Court will assume, for the purposes of the Motion to Dismiss, that the second contact—the

---

[4] Because there was no preexisting relationship between the decedents and Defendants, this factor is of little importance. *See Schulze v. Illinois Highway Transp. Co.*, 423 N.E.2d 278, 280 (Ill. App. Ct. 1981) (noting that the place of the parties' relationship will be inapplicable in many tort cases). *See also Martinez v. Smithway Motor Xpress, Inc.*, No. 99 C 6561, 2000 WL 1741910, at *3 (N.D. Ill., Nov. 24, 2000)

place where the conduct causing the injury occurred—favors Missouri. The third contact—the domicile, residence, place of incorporation, and place of business of the parties—is effectively a wash. The fourth contact—the place where the relationship between the parties is centered—favors Illinois. Considered alone, the Court does not believe that these contacts override the presumption in section 175 that Illinois governs the substantive issues presented in this case. However, "we must not merely 'count contacts' but, rather, consider them in light of the general principles embodied in section 6." *Townsend*, 879 N.E.2d at 906.

### iv.   *Section 6 Principles*

In a personal injury action, "[a] detailed analysis of all seven of the section 6 general principles is unnecessary." *Id.* at 906. Specifically, comment b to section 145 of the Second Restatement explains that section 6(2)(d) (the protection of justified expectations) and section 6(2)(f) (certainty, predictability, and uniformity of result) "are implicated only minimally in a personal injury action arising from an accident." *Id.* at 906 (citing Restatement (Second) Conflict of Laws § 145, cmt. b). Further, section 6(2)(a) (the needs of the interstate system) "is only minimally implicated in personal injury actions." *Id.* As to section 6(2)(g) (the ease in the determination and application of the law to be applied), the Court will not afford this factor much weight, as the Court is capable of determining and applying the law of either Illinois or Missouri. *See Curtis*, 2012 WL 1080116, at *9. The sections that remain relevant are section 6(2)(b), the relevant policies of the forum; section 6(2)(c), the relevant policies of other interested states and the relative interests of those states

20

in the determination of the particular issue; and section 6(2)(e), the basic policies underlying the particular field of law. *Townsend*, 879 N.E.2d at 906.

In the section 6 analysis in both *Smith* and *Curtis*, much emphasis was placed on the proposition that "[p]unitive damages are not meant to compensate a plaintiff for the damage he or she has suffered." *Curtis*, 2012 WL 1080116, at *10. Both courts found that this "'suggests that a state in which a defendant is domiciled has a considerably stronger policy interest in whether punitive damages are available than the state in which the plaintiff's injury occurred.'" *Id.* at *10 (quoting *Smith*, 753 F. Supp. 2d at 748). The *Smith* court posited that the only interest of the states in which the injuries may have occurred—none of which allowed for punitive damages—was "protecting non-resident corporations against excessive liability." *Smith*, 753 F. Supp. 2d at 749.

This same proposition—that punitive damages are not made to compensate plaintiffs, but rather to punish defendants—can be used to justify a court's disregard of a plaintiff's domicile in a choice-of-law analysis. In *Smith* the plaintiff was domiciled in Michigan, but the court paid this fact little mind, focusing instead on California's interest in "regulating the conduct of its resident corporations . . . ." *Id.* In an oft-cited Seventh Circuit case, the court found that the states of domicile of the plaintiffs had no interest in imposing damages on the non-domiciled defendants:

21

> The legitimate interests of these states, after all, are limited to assuring that the plaintiffs are adequately compensated for their injuries and that the proceeds of any award are distributed to the appropriate beneficiaries. Those interests are fully served by applying the law of the plaintiffs' domiciles as to issues involving the measure of *compensatory* damages . . . and the distribution of any award. Once the plaintiffs are made whole by recovery of the full measure of compensatory damages to which they are entitled under the law of their domiciles, the interests of those states are satisfied.

*In re Air Crash Disaster Near Chicago, Ill., on May 25, 1979*, 644 F.2d 594, 613 (7th Cir. 1981) (emphasis added).

Following these cases, the interests of Illinois to the punitive damages issue in the present case could be viewed as significantly reduced. First, although the accident happened on Illinois roads, Illinois' interest in "protecting non-resident corporations against excessive liability" for accidents that occur on its soil would be outweighed by the interests of the defendants' domiciles in punishing wrongful conduct in which its domiciliaries engage. Second, although the decedents were domiciled in Illinois, utilizing Illinois law on the compensatory damages issue would satisfy Illinois' interest in "assuring that the plaintiffs are adequately compensated for their injuries . . . ." Illinois' interests in "making whole" its domiciliaries satisfied, punishment would be left to the states in which Defendants are domiciled.

Admittedly, the positions these cases take with regard to punitive damages appear to be logically defensible. However, the Court does not believe that such approaches are accurate applications of Illinois law post-*Townsend*. In *Townsend*, the lower court had relied on the same approaches discussed above, finding, for instance, that "where the purpose of disallowing punitive damages is not related to

addressing plaintiffs' injury, once the plaintiffs are made whole by recovery of the compensatory damages to which they are entitled, the interests of Michigan law are satisfied." *Townsend*, 858 N.E.2d at 561 (citing *In re Air Crash Disaster Near Chicago, Ill., on May 25, 1979*, 644 F.2d at 613). However, the Illinois Supreme Court flatly rejected such an approach as an "understatement" of Michigan's interest in the punitive damages issue as the state in which the injury occurred, one which "fails to recognize the strong presumption in favor of applying Michigan law." *Townsend*, 879 N.E.2d at 908. As to Michigan's interests as the domicile of the plaintiffs, the court noted that while "Illinois certainly has a legitimate interest in the liability to be imposed on Illinois-based defendants . . . [,] Michigan has an equally legitimate interest in the remedies to be afforded its residents who suffer such tort injuries." *Id.* at 909.

In this Court's view, the Illinois Supreme Court made clear in *Townsend* that (1) the presumption in favor of applying the law of the place of injury is, in most cases, going to be a very strong one; (2) this strong presumption extends to punitive damages claims; and (3) the plaintiff's domicile has an interest in the law to be applied in punitive damages claims, even when the defendant is a non-domiciliary, and even in cases in which the plaintiff's domicile does not provide for punitive damages. This does not mean, of course, that the law of the place of injury will *always* govern punitive damages issues. In *Townsend*, the Illinois Supreme Court cited comment c of section 146, which states that "[t]he likelihood that some state other than that where the injury occurred is the state of the most significant

relationship is greater in those *relatively rare* situations where, with respect to the particular issue, the state of injury bears little relation to the occurrence and the parties." Restatement (Second) Conflict of Laws § 146, cmt. c (1971) (emphasis added). In other words, the state in which the injury occurs will not be as important a contact where the place of injury is fortuitous. The *Curtis* court gave the paradigmatic example of a fortuitous place of injury when it wrote of situations in which "a plane drops out of the sky and where it comes to rest depends on the speed of the aircraft, its trajectory, the nature and timing of the accident, prevailing winds, and so on . . . ." *Curtis*, 2012 WL 1080116 , at *6. *Townsend* suggests that in such situations the presumption in favor of applying the law of the place of injury may be weakened.

In cases like the present one, though, the result that *Townsend* commands is clear. Although Missouri "certainly has a legitimate interest in the liability to be imposed on [Missouri]-based defendants . . . [,] [Illinois] has an equally legitimate interest in the remedies to be afforded its residents who suffer such tort injuries." *Townsend*, 879 N.E.2d at 909. Furthermore, the place of injury here is not fortuitous: decedents were driving on the roads of their home state when their Jeep was struck, and Defendant Austin voluntarily traveled to Illinois, thereby purposefully availing himself of the benefits and restrictions of Illinois laws. *See Mitkal v. United Parcel Service Co.*, No. 09 CV 3355, 2011 WL 148405, at *7 (N.D. Ill. Jan. 18, 2011). The Court therefore concludes that, when applied to the relevant contacts identified in section 145, the principles of section 6 do not override the

24

presumption in favor of applying the law of the place of injury. Illinois law will apply to the punitive damages claim in this case.

This conclusion is warranted despite factual differences between this case and *Townsend*. First, although *Townsend* was a personal injury case and this is a wrongful death case, the Second Restatement makes clear that "the law applicable to wrongful death is selected by the same principles as control selection of the law applicable to personal injuries in general." Restatement (Second) Conflict of Laws § 175, cmt. a (1971). *But see Curtis*, 2012 WL 1080116, at *7 (distinguishing *Townsend* in part because *Townsend* was a personal injury case and *Curtis* involved a wrongful death claim). Second, and more significantly, in *Townsend* the "place where the conduct causing the injury occurred" pointed to the laws of two different states, and was therefore considered a wash. *Townsend*, 879 N.E.2d at 906. Here, for the purposes of the present Motion to Dismiss, the Court assumes that the offending conduct took place in Missouri. This is certainly a factor in favor of the defendant's domicile (and against the state in which injury occurred) that did not exist in *Townsend*. However, it is not enough to tip the scales away from Illinois. Where the place of injury is both non-fortuitous and the domicile of the plaintiff, *Townsend* makes clear that the presumption in favor of the place of injury is very strong. To rebut this presumption, Plaintiff would have to show something more— something that, on these facts, cannot be shown.

Because the Court finds that Illinois law will apply to Plaintiff's "aggravating circumstances" (punitive) damages claims, and because such damages are not

recoverable under Illinois law in wrongful death actions, the counts of the First Amended Complaint which seek aggravating circumstances damages must be dismissed. Defendants' Motion to Dismiss Counts II, IV, VI, and VIII of Plaintiff's First Amended Complaint is therefore granted.

CONCLUSION

For the foregoing reasons, Defendants' Motion to Exclude Exhibits Offered in Support of Motion to Dismiss [Doc. 17] is GRANTED, and Defendants' Motion to Dismiss Counts II, IV, VI, and VIII of Plaintiff's First Amended Complaint is GRANTED [Doc. 13]. This matter is referred back to Magistrate Judge John A. Gorman for further pretrial proceedings. IT IS SO ORDERED.

Entered this <u>6th</u> day of August, 2012.

                                    s/ Joe B. McDade
                                    JOE BILLY McDADE
                              United States Senior District Judge