UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| CURTIS J. HAMMOND, JR., as Independent Administrator of the Estate of CURTIS J. HAMMOND, SR., Deceased, and CURTIS J. HAMMOND, JR., as Independent Administrator of the Estate of EILEEN M. HAMMOND, Deceased, | ) ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.  11-cv-1295 |
| SYSTEM TRANSPORT, INC., a Washington corporation, TRANS-SYSTEM, INC., an Indiana corporation, and ROBERT D. AUSTIN, | ) ) ) ) ) ) | |
| Defendants. | ) | |

# ORDER & OPINION

This matter is before the Court on Defendants' Motion in Limine (Doc. 52) and Defendants' Motion for Protective Order (Doc. 53). Plaintiff filed Responses in opposition to both Motions (Docs. 55 & 56).[1] For the reasons stated below, both Motions are denied in part and granted in part.

### BACKGROUND[2]

On July 30, 2011, a semi-tractor trailer driven by Defendant Robert Austin collided with a vehicle driven by Curtis J. Hammond, Sr. at the intersection of U.S. Routes 136 and 24 in Fulton County, Illinois. Defendant Austin was an employee of

---

[1] Defendants' Motion for Summary Judgment as to Counts IX and X (Doc. 49) is also pending, which has not been fully briefed and will not be decided in this Order.
[2] Unless otherwise noted, the facts in this background section are undisputed, as they were admitted in Defendants' Amended Answer (Doc. 37).

Defendants System Transport, Inc., and Trans-System, Inc., who owned, operated, and maintained the semi-tractor trailer. Both Curtis J. Hammond, Sr. and Eileen M. Hammond, the passenger of the vehicle, died as a result of the crash.

Plaintiff Curtis J. Hammond, Jr., as the Administrator of the Estates of Curtis J. Hammond, Sr. and Eileen M. Hammond, filed a ten-count First Amended Complaint against Defendants on August 29, 2011. (Doc. 5). Counts I, III, V, and VII seek recovery under the Illinois Wrongful Death Act, 740 Ill. Comp. Stat. 180/1 et seq. Defendants have admitted liability with respect to these wrongful death claims,[3] but dispute the extent of damages. Counts IX and X seek recovery under the Illinois Survival Act, 755 Ill. Comp. Stat. 5/27-6. In the pending Motion for Summary Judgment, Defendants seek dismissal of these two claims as a matter of law. Counts II, IV, VI, and VIII were previously dismissed upon Defendants' motion. (Doc. 34).

## DISCUSSION

Both of Defendants' Motions primarily revolve around one question: What evidence is relevant to prove damages for grief, sorrow, and mental suffering in an

---

[3] Plaintiff appears to dispute that Defendants have admitted liability. However, in Defendants' Amended Answer, under each of these four counts, the relevant Defendants "admit that [P]laintiff has established sufficient evidence of the claim alleged in [this Count] and [Defendants] acknowledge liability for the same, but deny the extent of claimed damages." (*E.g.*, Doc. 37 at 7). Defendants also acknowledge their admission of liability in the present Motions. Moreover, though no more is needed, the Minute Entry for proceedings before Magistrate Judge John Gorman on November 14, 2012, states "[t]he Court finds that the [D]efendants have admitted liability based on [D]efendants['] statements and filed pleadings. Case will therefore proceed with the liability admitted on behalf of [D]efendant[s]." (Docket Entry, Nov. 14, 2012). Plaintiff can rest assured that Defendants have, in fact, admitted liability for these claims, and the only issue to be tried is the amount of damages.

Illinois Wrongful Death Act claim? Defendants contend that evidence of the events and circumstances leading up to and including the vehicle accident are irrelevant and inadmissible. Plaintiff disagrees, arguing that under the amended version of the Wrongful Death Act, allowing for damages for the emotional impact of the death, evidence of the circumstances of the accident is relevant.

Defendants rely almost exclusively on the holding of one case in support of their Motions. They argue that the Illinois Supreme Court has held that evidence of the events leading up to an accident and the defendant's failure to stop afterwards are not relevant to a claim for damages under the Wrongful Death Act. *Bullard v. Barnes*, 468 N.E.2d 1228, 1235 (Ill. 1984), *aff'g* 445 N.E.2d 485 (Ill. App. Ct. 1983). Further, in the appellate decision, the court stated that any evidence of the "means of his demise and the operative facts of the accident were immaterial." *Bullard*, 445 N.E.2d at 492. As a result, Defendants argue, 1) any evidence of or reference to the circumstances leading up to and including the accident should be excluded at trial (Doc. 52 at 1); and 2) any information Defendant Austin could provide at a deposition would be irrelevant to Plaintiff's claim and thus such a deposition would serve only to annoy embarrass, oppress, or place undue burden on Defendants (Doc. 53 at 3). Before turning to the substance of Defendants' Motions, the Court will provide an overview of the Wrongful Death Act and address the applicability of state and federal law to these issues.

### *I. Damages under the Illinois Wrongful Death Act*

The Illinois Wrongful Death Act allows a decedent's spouse and next of kin to recover damages for the injuries from a wrongful death. 740 Ill. Comp. Stat. 180/1

to 180/2. The relevant portion for purposes of the present Motions states: "In every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, including damages for grief, sorrow, and mental suffering, to the surviving spouse and next of kin of such deceased person." *Id.* § 2.

The term "pecuniary injuries" has long been interpreted by Illinois courts to include non-economic losses, specifically loss of society. *Elliott v. Willis*, 442 N.E.2d 163, 168 (Ill. 1982). Loss of society is the "deprivation of love, companionship, and affection from the deceased person." *Turner v. Williams*, 762 N.E.2d 70, 77 (Ill. App. Ct. 2001). However, courts specifically distinguished damages based on grief or mental anguish, which they found were not allowable under the Act. *E.g.*, *id.*[4] Then, in 2007, the Illinois legislature amended the Wrongful Death Act to allow for these previously unrecoverable damages. The only change to the operative language of the Act was to add the words "including damages for grief, sorrow, and mental

---

[4] A footnote from a Supreme Court opinion discussing a wrongful death claim based on federal law helps to clarify the distinction between these two different bases for damages:
> Loss of society must not be confused with mental anguish or grief, which is not compensable under the maritime wrongful-death remedy. The former entails the loss of positive benefits, while the latter represents an emotional response to the wrongful death. The difference between the two is well expressed as follows: 'When we speak of recovery for the beneficiaries' mental anguish, we are primarily concerned, not with the benefits they have lost, but with the issue of compensating them for their harrowing experience resulting from the death of a loved one. This requires a somewhat negative approach. The fundamental question in this area of damages is what deleterious effect has the death, as such, had upon the claimants? In other areas of damage, we focus on more positive aspects of the injury such as what would the decedent, had he lived, have contributed in terms of support, assistance, training, comfort, consortium, etc.[']

*Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 585 n.17 (1974) (citation omitted).

suffering" to the description of available damages. *See* H.B. 1789, 95th Gen. Assemb., Reg. Sess. (Ill. 2007). The amendment only applied to claims accrued after May 31, 2007. *Id.* In the six years since then, no reported court decision has squarely confronted the issue of whether evidence of the manner of death is relevant to this type of damages claim.

## II. Erie *Doctrine*

A federal court exercising its diversity jurisdiction over a state law claim applies state substantive law, but it applies federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). The Federal Rules of Evidence typically control on matters of admissibility of evidence. *E.g.*, *Barron v. Ford Motor Co. of Can. Ltd.*, 965 F.2d 195, 198-99 (7th Cir. 1992); *In re Air Crash Disaster Near Chi., Ill. on May 25, 1979*, 701 F.2d 1189, 1193 (7th Cir. 1983). Thus, the substantive law of the state of Illinois[5] applies to this case, but its procedural rules yield to federal procedural rules. The parties failed to address this important issue in their briefs.

Defendants rely heavily on the state court decisions in *Bullard* to support their arguments regarding admissibility of evidence, without explaining their force and effect in this Court. As explained below, to the extent Illinois state courts would extend the *Bullard* rule[6] to preclude evidence of the circumstances and manner of

---

[5] The Court previously concluded that Illinois law applied to the dismissed punitive damages claims, (Doc. 34 at 25-26), and the same analysis supports applying Illinois law to the other claims, which the parties do not appear to contest.

[6] For many of the same reasons the Court concludes evidence of the manner of death is relevant in this case, the Court believes Illinois state courts would reach the same conclusion. However, because it is a procedural rule, the Court need not make such a determination.

death to prove damages claims for grief, sorrow, and mental suffering, the rule is procedural and thus not binding on this Court under the *Erie* doctrine.

The Federal Rules of Evidence apply to determine whether particular evidence is admissible in federal court. *In re Air Crash Disaster*, 701 F.2d at 1193; Fed. R. Evid. 1101. However, "the relevance of the evidence is ascertainable only by reference to the substantive law of the state." *In re Air Crash Disaster*, 701 F.2d at 1193 ("To the extent that the state evidentiary rule defines what is sought to be proved—here, the measure of damages—it may bind the federal court under *Erie* principles."); *see also* 22A Charles Alan Wright et al., *Federal Practice and Procedure* § 5201 (2d ed. 2013) ("[B]ecause of the interrelationship between the substantive law and the question of relevance, it is often difficult to determine whether a state decision on admissibility of evidence is premised on some peculiarity of the local substantive law or on an idiosyncratic notion of relevance."). If a rule is "closely linked with the state's view of the measure of damages," it is binding under *Erie*. *In re Air Crash Disaster*, 701 F.2d at 1194. However, if the rule is based simply on the competence of a court to deal with a type of evidence, such as a rule excluding evidence to avoid confusion, it is procedural, and "a federal court may assess its own capabilities differently." *Id.* at 1195. The difference between a rule of evidence and a substantive rule is that "[a] pure rule of evidence, like a pure rule of procedure, is concerned solely with accuracy and economy in litigation . . . while a substantive rule is concerned with the channeling of behavior outside the courtroom." *Barron*, 965 F.2d at 199-200.

The rule set forth in *Bullard* is focused on the accuracy of the litigation, and does not define the damages available or attempt to channel behavior outside the courtroom. The Illinois Supreme Court concluded:

> On remand, no evidence regarding defendant Barnes' passing maneuver or failure to stop after the collision should be admitted. We agree with defendants' argument that this evidence is not relevant on any issue to be retried and with the appellate court's opinion that its admission constituted reversible error. Relevancy is established where a fact offered tends to prove a matter in controversy (*People v. Free* (1983), 94 Ill.2d 378, 413, 69 Ill.Dec. 1, 447 N.E.2d 218; *Marut v. Costello* (1966), 34 Ill.2d 125, 128, 214 N.E.2d 768), and in view of defendants' admission of liability, these matters were not in controversy.

*Bullard*, 468 N.E.2d at 1235. This analysis is an application of the then-common law rules of evidence in Illinois. Illinois courts applying this holding of *Bullard* have similarly treated the holding as an application of the rules of evidence. *See, e.g.*, *Cancio v. White*, 697 N.E.2d 749, 756 (Ill. App. Ct. 1998). Thus, *Bullard* was an application of state evidentiary rules to a claim for loss of society and loss of support damages, and the rule it established and any extension of it are procedural in nature and not binding on this Court. Therefore, the Federal Rules of Evidence, particularly Rules 401 and 402, will be applied to determine the admissibility of evidence of the circumstances and manner of death in the present case, without regard for the *Bullard* rule of exclusion.

### III. Motion in Limine

Defendants seek to prohibit Plaintiff from "offering reference, evidence, or argument concerning the events, facts, and circumstances leading up to and including the accident during the *voir dire* of the jury, opening statements, the

7

presentation of evidence and witnesses, and closing statements." (Doc. 52 at 1). They argue that such evidence is irrelevant.

The Court applies Rules 401 and 402 to determine if the contested evidence is relevant to Plaintiff's claim. However, as noted above, whether evidence is relevant depends on state substantive law, which delineates the scope of the claim and informs the decision of whether a fact is of consequence. *See In re Air Crash Disaster*, 701 F.2d at 1193. Therefore, the Court must first apply state substantive law to determine the scope of a claim for grief, sorrow, and mental suffering. The Court will then apply the Federal Rules of Evidence to determine whether evidence of the circumstances surrounding the accident in the present case is relevant to Plaintiff's claim.

### A. State Substantive Law

In interpreting a state statute, a federal court must apply that state's statutory construction principles. *See Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir. 1998). In Illinois, the intent of the legislature is of primary importance, and the "most reliable indicator" of that intent is the language of the statute, "which is to be given its plain, ordinary and popularly understood meaning." *People v. Powell (In re Det. of Powell)*, 839 N.E.2d 1008, 1015 (Ill. 2005). The courts "look to the well-known meaning of statutory terms at the time the law was passed." *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 939 N.E.2d 487, 491 (Ill. 2010). The Illinois Supreme Court approves the use of dictionaries to determine the meaning of terms undefined in the statute. *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 37 (Ill. 2005). Only if the language is ambiguous

can courts consider legislative history or other interpretive aids. *Powell*, 839 N.E.2d at 1015. If other states have similar laws, their decisions are "entitled to respect and consideration." *Urban v. Loham*, 592 N.E.2d 292, 296 (Ill. App. Ct. 1992) (internal quotation marks omitted). A court can also examine "the reason and necessity for the law, the evils to be remedied, and the objects and purposes to be obtained." *Carter v. SSC Odin Operating Co., LLC*, 976 N.E.2d 344, 355 (Ill. 2012).

In amending the Wrongful Death Act, the Illinois legislature chose not to define the terms grief, sorrow, and mental suffering, instead contemplating that the courts would make such interpretations. *See* Ill. H.R. Transcript, 95th Gen. Assemb., 44th Legis. Day, at 54, 60.[7] Though undefined, those terms have ordinary, non-technical meanings. Grief is "suffering, pain, [or] distress," or "emotional suffering." *Webster's Third New International Dictionary* 998-99 (1986). Similarly, sorrow is defined as "uneasiness or anguish due to loss." *Id.* at 2175. These words indicate the Illinois legislature clearly intended to expand the damages available under the Wrongful Death Act to include recovery for the emotional impact on the deceased person's spouse and next of kin, distinct from the loss of companionship already recoverable under the Act.

Of course, there is still the question of what the source of the grief, sorrow, or mental suffering may be. The Act specifies that damages are given as the jury deems to be "fair and just compensation with reference to the pecuniary injuries *resulting from such death*, including damages for grief, sorrow, and mental suffering." 740 Ill. Comp. Stat. 180/2 (emphasis added). Thus, the grief, sorrow, and

---

[7] Available at http://www.ilga.gov/house/transcripts/htrans95/09500044.pdf (last visited Apr. 23, 2013).

9

mental suffering are compensable only insofar as they are injuries stemming from the wrongful death. This could be interpreted to mean only the grief from the mere fact of death, or it could more broadly include the manner or circumstances of the death. Death is defined in a variety of ways, including "the state of being no longer alive" and "the act, process, or fact of dying." *Webster's Third New International Dictionary* 581 (1986). Black's Law Dictionary defines death as "[t]he ending of life; the cessation of all vital functions and signs." *Black's Law Dictionary* 428 (8th ed. 2004). These definitions indicate that death, as ordinarily understood, includes more than the mere fact that a person is dead. The intent of the legislature, based on the meaning of these key terms, was to compensate for the spouse's and next of kin's emotional consequences from the end of decedent's life, including the process or manner of death.

In the only reported Illinois case the Court could find discussing damages under the amended version of the Act,[8] there is a brief mention of what was relevant to the affirmation of the damages award. The daughter of a decedent brought a wrongful death claim against her brother, who had killed their mother. *Dougherty v. Cole*, 934 N.E.2d 16, 17-18 (Ill. App. Ct. 2010). The defendant appealed the jury award of $200,000 on the wrongful death claim, arguing it was "outside the limit of fair and reasonable compensation." *Id.* at 23. In affirming the award, the

---

[8] There is one other recent state court decision that may appear to entirely reject the new statutory provision for damages based on grief. *Watson v. S. Shore Nursing & Rehab. Ctr., LLC*, 965 N.E.2d 1200, 1208 (Ill. App. Ct. 2012) ("[L]oss of society does not include the grief and mental anguish resulting from the death, and such damages are therefore not recoverable in a wrongful death suit."). However, the decedent in that case died a few days before May 31, 2007; thus, the amendment did not apply to the claim.

court said: "Considering Alycia's close relationship with her mother *and the manner in which she died*, $200,000 is not outside the scope of fair and reasonable compensation." *Id.* (emphasis added). Though the issue was not central to the appeal, this suggests that Illinois courts would agree the manner of death is within the scope of the source of damages allowable for grief, sorrow, and mental suffering. Moreover, if the grief were only compensable if it stemmed from the fact that the loved one is no longer alive, it would be virtually indistinguishable from damages for loss of society, already allowed before the Act was amended. Thus, the grief and mental suffering resulting from the manner of death may be compensable under the Wrongful Death Act.

Common sense further supports this reasoning. Anyone who has lost a loved one knows that the manner in which he or she died can be the source of a large portion of the grief, sorrow, and mental suffering that ensues. Therefore, it would make sense for the Illinois legislature to intend to compensate for that emotional suffering. Just as a peaceful death may bring comfort to grieving loved ones, knowing that a loved one died a violent death could understandably increase the resulting grief, sorrow, and mental suffering.

Other courts applying similar laws have reached similar conclusions. An Arizona state court analyzed the state's wrongful death statute and concluded that, under the dictionary definition of "death," and considering the remedial nature of the statute, mental anguish from the manner of death was also compensable. *Girouard v. Skyline Steel, Inc.*, 158 P.3d 255, 259-60 (Ariz. Ct. App. 2007). Thus, evidence concerning the circumstances of death was not irrelevant. *Id.* In addition,

11

an Arkansas court applying their wrongful death act determined that the "violence and suddenness of the death" was a factor that should be considered when evaluating mental anguish. *St. Louis Sw. Ry. Co. v. Pennington*, 553 S.W.2d 436, 450 (Ark. 1977).

### *B. Relevance of Evidence under the Federal Rules*

Having concluded that the amendment to the Wrongful Death Act broadened the damages available to include recovery for the emotional consequences of a wrongful death, including the manner of death, the Federal Rules of Evidence must be applied to determine the admissibility of the challenged evidence. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The threshold for relevance is very low. *See United States v. Boros*, 668 F.3d 901, 903 (7th Cir. 2012). Irrelevant evidence is inadmissible. Fed. R. Evid. 402.

The Fifth Circuit, considering the admissibility of evidence of the condition of a person's remains under the Federal Rules of Evidence, determined that such evidence was not irrelevant to a claim for damages based on mental anguish in a wrongful death case. *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1004 (5th Cir. 1998) ("We have little doubt that the knowledge that their husband and father was decapitated and badly burned in the accident added to the Campbells' mental anguish."). Further, it was an abuse of discretion for the judge to exclude all testimony as to the condition of the remains. *Id.* at 1005. However, certain types of

evidence, such as photographs of the remains, could be excluded under Rule 403. *Id.* at 1004.

Like in *Campbell*, the fact that the Hammonds died suddenly in a serious vehicle accident may make it more probable that their next of kin experienced compensable grief and sorrow from the death. Thus, evidence concerning the circumstances and manner of the decedents' deaths is relevant to the issue of damages, and will not be excluded under Rule 402. This is not to say that all evidence Plaintiff wishes to bring relating to the manner of death will be admissible. Rather, the Court simply concludes that it cannot exclude all evidence of the manner of death or the events surrounding the accident under Rule 402. The admissibility of particular pieces of evidence will be resolved as it arises. For example, under Rule 403, the Court may exclude evidence of the circumstances of the decedents' deaths that is more prejudicial than probative.

However, evidence of Defendant Austin's negligence, such as the allegation that he violated rules limiting the hours he could work before resting, which resulted in him falling asleep and running a stop sign, is not relevant to Plaintiff's claim. As indicated in the above statutory analysis, the grief, sorrow, and mental suffering is compensable only if it arises from the death, not from the negligence that preceded the death. Plaintiff's argument that the children of the decedents experience increased grief because they think about the possibility that if only Defendant had abided by the applicable laws and rules, their parents would not have died, (Doc. 55 at 5-6), only confirms the understanding that such emotional responses do not arise from the death and are thus not compensable. Therefore, any

13

evidence of Defendant's negligent acts or omissions leading up to the accident are irrelevant and will be excluded at trial.

## *IV. Motion for Protective Order*

Defendants also seek to prevent a deposition of Defendant Austin, the driver of the truck that struck the decedents' vehicle, based in part on the reasoning advanced in its Motion in Limine. They claim that any information Plaintiff could obtain from a deposition would be irrelevant, and that such a deposition would thus serve only to annoy embarrass, oppress, or place undue burden on Defendants. (Doc. 53 at 3-4). As noted above, evidence concerning the accident itself and the immediate aftermath, including Defendant Austin's observations of the decedents and the scene of the collision, could potentially be relevant to Plaintiff's claim. Even if it were not, as Plaintiff correctly points out, Defendant Austin could provide information critical to Counts IX and X, if he testifies to observing any signs of the Hammonds experiencing conscious pain and suffering. However, in light of the ruling above that evidence related to Defendant Austin's pre-collision negligent actions is irrelevant and inadmissible, Plaintiff must limit the scope of its deposition and may not question Defendant Austin about his actions or observations prior to the point of impact.

As a final note, Plaintiff has a valid point that he is entitled to depose Defendant Austin before responding to Defendants' Motion for Summary Judgment, because he could obtain evidence to support Counts IX and X. However, filing a document entitled "Plaintiff's Response to Defendants' Motion for Summary Judgment as to Counts IX and X of Plaintiff's First Amended Complaint," which

merely asserts they should be allowed to depose Defendant Austin before filing a response, was a procedurally improper and risky move. Plaintiff did not ask for more time to respond, but rather, filing a document he called a Response to the Motion, assumed he would be given more time. The Court could have granted Defendants' Motion for Summary Judgment, as Plaintiff's Response did not point to any evidence that would permit a finder of fact to find in his favor. *See Modrowski v. Pigatto*, No. 11-1327, 2013 WL 1395696, at *2-3 (7th Cir. Apr. 8, 2013). The better course would have been for Plaintiff to request an extension of time or a stay of briefing until the issue of deposing Defendant Austin was resolved. The Court finds it appropriate in this case to stay briefing of the Motion for Summary Judgment (Doc. 49). Plaintiff's amended response is due twenty-one days after Defendant Austin is deposed, with Defendants' reply due fourteen days thereafter.

## Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion in Limine (Doc. 52) is DENIED IN PART and GRANTED IN PART and Defendants' Motion for Protective Order (Doc. 53) is DENIED IN PART and GRANTED IN PART. Defendant Austin SHALL appear for a deposition within twenty-eight days of the date of this Order. Evidence of Defendant Austin's observations or actions prior to the vehicle collision WILL NOT be admitted at trial, and Plaintiff SHALL refrain from asking questions about them during the deposition. Plaintiff's amended response to Defendants' Motion for Summary Judgment is DUE twenty-one days after the deposition of Defendant Austin. Defendants' reply to this response is DUE fourteen days after Plaintiff's response is filed. The currently scheduled dates for

the final pretrial conference and trial are VACATED, to be reset after the pending Motion for Summary Judgment is resolved.

Entered this <u>26th</u> day of April, 2013.

<u>s/ Joe B. McDade</u>
JOE BILLY McDADE
United States Senior District Judge
