# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| CURTIS J. HAMMOND, JR., as Independent Administrator of the Estate of CURTIS J. HAMMOND, SR., Deceased, and CURTIS J. HAMMOND, JR., as Independent Administrator of the Estate of EILEEN M. HAMMOND, Deceased,<br><br>    Plaintiff,<br><br>v.<br><br>SYSTEM TRANSPORT, INC., a Washington corporation, TRANS-SYSTEM, INC., an Indiana corporation, and ROBERT D. AUSTIN,<br><br>    Defendants. | Case No.   11-cv-1295 |

## O R D E R  &  O P I N I O N

Before the Court are Plaintiff's First, Second, and Third Motions in Limine (Docs. 72, 73, and 74), as well as Defendants' Fourth Motion in Limine (Doc. 81). These Motions have all been fully briefed.

### BACKGROUND[1]

On July 30, 2011, a semi-tractor trailer driven by Defendant Robert Austin collided with a vehicle driven by Curtis J. Hammond, Sr. at the intersection of U.S. Routes 136 and 24 in Fulton County, Illinois. Defendant Austin was an employee of Defendants System Transport, Inc., and Trans-System, Inc., who owned, operated,

---

[1] Unless otherwise noted, the facts in this background section are undisputed, as they were admitted in Defendants' Amended Answer (Doc. 37).

and maintained the semi-tractor trailer. Both Curtis J. Hammond, Sr. and Eileen M. Hammond, the passenger of the vehicle, died as a result of the crash. Plaintiff Curtis J. Hammond, Jr., as the Administrator of the Estates of Curtis J. Hammond, Sr. and Eileen M. Hammond ("Decedents"), brought the present suit. (Doc. 5). The only remaining counts are Counts I, III, V, and VII. In those Counts, Plaintiff seeks recovery under the Illinois Wrongful Death Act, 740 Ill. Comp. Stat. 180/1 et seq. Defendants have admitted liability on these claims, and a trial is scheduled to determine the extent of damages.

In Orders ruling on previous Motions in Limine, the Court has concluded that evidence relating to the circumstances of death could be relevant to proving damages, but that the acts that caused the accident, such as negligence by the driver, are not relevant to damages. (Doc. 62 at 13-14). Specifically, Plaintiff is not precluded from referencing the fire that occurred shortly after impact. (Doc. 71 at 5). Additionally, Plaintiff may not show the coroner's photographs of Decedents to the jury, but may make reference to these photographs and the impact they had on Decedents' next of kin. (Doc. 71 at 4).

## DISCUSSION

In his First Motion in Limine, Plaintiff seeks to exclude evidence showing that Decedents died on impact. Relatedly, Defendants, in their Fourth Motion in Limine, seek to exclude any reference to an allegation that Decedents survived the initial impact of the collision. These Motions are addressed together below. In Plaintiff's other two Motions, he seeks to exclude as irrelevant evidence that

Decedents consumed alcohol prior to the accident and that Decedent Curtis J. Hammond, Sr. had prior medical conditions.

## I. *Opinion Evidence of Death on Impact*

In his First Motion in Limine, Plaintiff argues Defendants should be precluded from making any reference to a claim that Decedents died on impact, primarily on the basis that it would necessarily be based on the coroner's opinion, and such an opinion could only be expert opinion the coroner is not qualified to give. (Doc. 72 at 2-3). Defendant responds that such a theory is supported by all of the evidence, and further seeks to exclude reference to an alternative theory that Decedents did not die on impact, but instead survived the initial collision. (Doc. 78 at 2; Doc. 81 at 2).

The question of precisely when Decedents died, whether on initial impact or some time shortly thereafter, is technically an open question, as there is no conclusive evidence on the matter. However, Defendants argue that all of the evidence suggests Decedents did not survive the initial impact, including the opinion of the coroner and the testimony of the witnesses who stated there was no movement or sound from Decedents after the impact. While it is unclear how either argument is relevant to determining damages, the parties are not prevented from presenting a narrative to the jury, so long as it has a basis in the evidence. To the extent it is relevant, Defendants may present evidence that shows Decedents died on impact. If Plaintiff has relevant evidence to the contrary, that may also be presented. The attorneys' statements to the jury must reflect the evidence. Thus, at

this time, the Court will not limit the case theories the parties intend to present to the jury, though they are reminded that any statements made during opening statements or closing arguments must fairly reflect the expected or admitted evidence. If unsure, an advance ruling from the Court would be advisable.

The Court takes note of Defendants' argument that Plaintiff may be trying to "'backdoor' a conscious pain and suffering claim." (Doc. 78 at 2). Plaintiff denies the allegation, and describes the argument he does intend to make, that the "next of kin's grief over the uncertainty of whether the decedents survived even momentarily" and "their beliefs that decedents may have briefly suffered pain" is compensable grief under the Wrongful Death Act. (Doc. 82 at 1-2). These particular arguments are inconsistent with the evidence and do seem to be a back door into pain and suffering damages.[2] Such arguments could be relevant in some cases, but here, where there was insufficient evidence to sustain a pain and suffering claim, they would only serve to invite the jury to award damages on improper bases. Compensable grief includes grief over the circumstances and manner of death, *i.e.*, a sudden death in a serious vehicle accident, but does not include imagined pain and suffering unsupported by the evidence.

Plaintiff's Motion could also be interpreted as a motion to exclude the opinion of the coroner as to the cause of death, or more specifically, the exact timing of death. Plaintiff argues the opinion is a "lay opinion that should not be admissible

---

[2] In that respect, a limiting instruction as to its use only for the purpose of its relevance, if any, to the next of kin's grief rather than any pain or suffering experienced by Decedents, would be appropriate. The parties are invited to submit an instruction to that effect with the rest of the proposed jury instructions.

pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993)."[3] (Doc. 72 at 3). However, *Daubert* has no applicability to lay opinions. Rather, the Court interprets Plaintiff's argument to be that an opinion that Decedents died on impact cannot be given as lay opinion under Rule 701, and would therefore have to satisfy the standard for expert opinion. Plaintiff seemingly argues the coroner is not qualified to give such expert opinion, and thus it must be excluded from trial.

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The trial judge must serve as the Rule 702 gatekeeper, ensuring that expert testimony presented to the jury is reliable and that it will assist the trier of fact. *See Daubert*, 509 U.S. at 589-91. Lay opinion, on the other hand, is admissible only if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Accordingly, an opinion based on specialized

---

[3] In his Response to Defendants' Fourth Motion in Limine, Plaintiff indicates he is not challenging the opinion as to cause of death, but because his Motion seems to argue otherwise, the Court analyzes the issue.

knowledge cannot masquerade as a lay opinion to avoid the requirements in Rule 702. *See* Fed. R. Evid. 701 advisory committee's note. An opinion that is based on experience or specialized knowledge is an expert opinion. *See United States v. Christian*, 673 F.3d 702, 709 (7th Cir. 2012). As distinguished in the Advisory Committee notes, lay opinion is based on "a process of reasoning familiar in everyday life," while expert opinion is based on "a process of reasoning which can be mastered only by specialists in the field." Fed. R. Evid. 701 advisory committee's note (internal quotation marks omitted).

Here, the opinion at issue is on the cause of death, or more specifically, the timing of death and whether it occurred upon impact. Such an opinion would clearly be based on scientific, technical, or otherwise specialized knowledge. An average person could not opine as to the cause of an individual's death without specialized knowledge or training. Expert opinion is often used to prove the cause of death. *See, e.g.*, *Gayton v. McCoy*, 593 F.3d 610, 616-17 (7th Cir. 2010). Defendants appear to understand this, arguing that "Coroner Hines is qualified to render opinions based on his observations and experience as a Coroner." (Doc. 78 at 4). Thus, it must come within the requirements of Rule 702.

Coroner Hines, though qualified by statute to determine whether an autopsy is necessary and to issue a death certificate, does not have the specialized training or education that qualifies him as an expert under the Federal Rules of Evidence to render an opinion as whether Decedents died on impact. Coroner Hines served as an embalmer and funeral director, licensed by the State of Illinois, prior to being

6

elected as coroner. (Doc. 72-1 at 3). He also has completed basic training for coroners and medical examiners as well as continuing education. (Doc. 72-1 at 3). He is not a physician and has no significant medical training. His training likely qualifies him to determine generally that Decedents died as a result of the vehicle accident, but Coroner Hines is not qualified to present expert opinion as to medical details of the cause of death or the precise time of death. The coroner's testimony may be presented for numerous other pieces of evidence, but he cannot offer an opinion on whether Decedents died on impact at trial.

In summary, neither party is prevented from making material arguments supported by relevant evidence at trial, including that Decedents did or did not die on impact, though that question is not central to the issues to be tried and should not become the focus of trial. Additionally, Coroner Hines cannot offer opinion as to the timing or medical details of the cause of Decedents' death. Thus, Plaintiff's First Motion in Limine is granted in part and denied in part, and Defendants' Fourth Motion in Limine is denied.

## *II. Alcohol Consumption*

Plaintiff argues in his Second Motion in Limine that any evidence that Decedent Curtis J. Hammond, Sr. consumed a small amount of alcohol prior to the collision is irrelevant to the issues to be tried and should be excluded. (Doc. 73 at 1-2). Defendants respond that it may be relevant because, as evidenced by Illinois Pattern Jury Instruction 31.04, a decedent's "habits of . . . sobriety" may be considered by the jury to determine pecuniary loss. Defendants acknowledge that

7

there is "no evidence of impairment on the night of the accident," but they still have a right to "explore Decedents' sobriety." (Doc. 79 at 3).

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Evidence that is relevant may be excluded under Rule 403 if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Defendants accurately point out that the habit of sobriety can be considered by a jury in calculating wrongful death damages, as shown by the pattern instructions. They also cite cases in which alcohol abuse was considered relevant to damages under the Wrongful Death Act. *See Yambert v. Office of the Sheriff of Lee Cnty.*, No. 05 C 50090, 2007 WL 2743581, at *1-2 (N.D. Ill. Sept. 11, 2007). However, there is a big difference between one beer on one day and a history of alcohol abuse. The Court found no cases in which one instance of drinking was deemed relevant to whether or not a decedent had a habit of sobriety. Cases citing the habit of sobriety as a factor for damages indicate that it is relevant because it helps to determine how much money the decedent would have spent on support instead of on personal consumption. *See In re Aircrash near Roselawn, Ind. on Oct. 31, 1994*, Nos. MDL-1070, 95 C 4593, 1996 WL 114814, at *1 (N.D. Ill. 1996); *Hudnut v. Schmidt*, 58 N.E.2d 929, 930 (Ill. App. Ct. 1944). This is supported by the

8

fact that the "habits of (industry,) (sobriety,) (and) (thrift)" are listed as one factor in the pattern instructions—as emphasized when listed together, these three habits all relate to calculating the monetary value the person provided to the family. Ill. Pattern Jury Instr., Civil, No. 31.04.

The relevance threshold is low, and accordingly, evidence of drinking alcohol the day of the accident is relevant insofar as it could help show a habit of sobriety or lack thereof, which in turn can be used by the jury in calculating damages. However, Defendants have given no indication that they have any other evidence of alcohol abuse or addiction, and the probative value of one instance of drinking is outweighed by the risk of unfair prejudice. Though the prejudicial effect of Decedent having a small amount of beer is relatively low, a juror could improperly use this to lay some blame for the accident on Decedent, contrary to the admission of liability. The probative value, on the other hand, is virtually nonexistent: If it is the only time Decedent drank, then it is not a habit, and if it is not, then Defendants have ample grounds on which to question witnesses at trial about Decedent's drinking without focusing on this particular instance. The Court agrees that the probative value of evidence of the small amount of alcohol consumed by Decedent Curtis J. Hammond, Sr. prior to the collision is substantially outweighed by the danger of unfair prejudice; thus it will be excluded pursuant to Rule 403. Though Defendants may not introduce evidence of Decedents' alcohol consumption the day of the accident, particularly including Decedent Curtis J. Hammond, Sr.'s vitreous fluid

alcohol level, the parties may inquire generally into any habit of sobriety or lack thereof at trial, such as how frequently Decedents consumed alcohol.

### III. Decedents' Prior Medical Conditions

Plaintiff finally seeks to exclude any evidence of Decedents' medical conditions prior to the collision. (Doc. 74 at 1). He argues there is no evidence that any prior cardiac procedures performed on Curtis J. Hammond, Sr. would limit his life expectancy, and no other medical evidence that would indicate Decedents had a reduced life expectancy. Defendants argue that health is relevant to damages, as indicated by Pattern Instruction 31.04, and that even without expert testimony, the jury can consider medical conditions to determine damages.

The health of the decedent is necessarily one of the primary considerations for damages for a wrongful death claim, as it can be used by the jury to estimate how much longer the decedent would have lived absent the wrongful death. *See* Ill. Pattern Jury Instr., Civil, No. 31.13 (instructing jury to consider decedent's health when using a mortality table to determine life expectancy). Thus, it is clearly relevant and will not be excluded on that basis.

Plaintiff apparently takes issue with the fact that there is no expert testimony to accompany any evidence of Decedent Curtis J. Hammond, Sr.'s cardiac health history, and that this evidence, too, should be barred by *Daubert*. (Doc. 74 at 2). However, so long as Defendants do not attempt to introduce any expert opinions about Decedents' prior medical conditions, Rule 702 and *Daubert* do not apply. The jury may consider the health of Decedents in calculating damages, using common

knowledge and experience to evaluate the evidence, even in the absence of expert testimony to make more sense of the effect on life expectancy. Plaintiff has cited nothing that requires defendants presenting evidence of a decedent's health to do so only through expert testimony. Thus, Plaintiff's Third Motion in Limine is denied.

## CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's First Motion in Limine (Doc. 72) is GRANTED IN PART and DENIED IN PART, Plaintiff's Second Motion in Limine (Doc. 73) is GRANTED, Plaintiff's Third Motion in Limine (Doc. 74) is DENIED, and Defendants' Fourth Motion in Limine (Doc. 81) is DENIED.

Entered this 12th day of September, 2013.

                                                            s/ Joe B. McDade
                                                            JOE BILLY McDADE
                                          United States Senior District Judge